**Carolyn Ann EMORY, by her Guardian ad Litem, William P. Emory, Plaintiff,**

v.

**PIEDMONT CHEMICAL COMPANY and Berman Leasing Company, Defendants.**

**Civ. A. No. 4531.**

United States District Court W. D. South Carolina, Greenville Division.

June 18, 1965.

Benjamin A. Bolt, Bolt & Bowen, Greenville, S. C., for plaintiff.

W. Francis Marion, Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., for defendants.

SIMONS, District Judge.

This is an action for personal injuries allegedly sustained by plaintiff, a resident of South Carolina, as a result of the collision which occurred on July 31, 1963, between a 1955 Ford automobile in which she was riding as a guest passenger and a 1958 Mack tractor with tanker attached, owned by defendant Berman Leasing Company, and leased to defendant Piedmont Chemical Company, both corporate defendants being foreign corporations, which was operated on said occasion by one James Raymond Blocker, while acting in the scope of his employment with Piedmont Chemical Company and as its agent and employee.

Jurisdiction of this court is invoked under Title 28 U.S.C. § 1332[a][1] based upon diversity of citizenship among the plaintiff and defendant foreign corporations, and the requisite amount in controversy.[1]

---

1. 28 U.S.C. 1332 [a] [1] provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—[1] citizens of different States."

The complaint alleges that the accident occurred on U. S. Highway #29, approximately 6 miles north of Greenville, South Carolina, when the driver of the Mack tractor and tanker drove the same from its parking place in front of a drive-in restaurant into and across the southbound lanes of said highway, completely blocking said lanes, causing the driver of the automobile in which plaintiff was riding as a guest passenger to collide violently with the tractor-tanker; that in said collision plaintiff was thrown against the dash and the windshield seriously and permanently injuring her about her face and body.

In their answer defendants generally denied all the material allegations of plaintiff's complaint; they also alleged that the sole proximate cause of the collision was the negligence of the driver of the car in which plaintiff was riding; and that plaintiff herself was guilty of contributory negligence, which contributed as a direct and proximate cause of the collision and resulting injuries and damages to her.

The case was tried before me without a jury on March 17, 1965, in Greenville, South Carolina. I find the facts and state my conclusions of law thereon in accordance with Rule 52[a] of Federal Rules of Civil Procedure.

Upon commencement of the trial plaintiff had reached her twenty-first birthday; and upon motion her guardian ad litem was dismissed from the action. At the conclusion of plaintiff's testimony, counsel for defendants moved for a directed verdict as to defendant Berman Leasing Company. There was no evidence presented to show that this defendant was in any way responsible for the operation of the tractor-tanker upon the occasion in question, and it further appearing that the same was under the complete management and control of defendant Piedmont Chemical Company, its agents and servants, said motion was granted.

## FINDINGS OF FACT

On July 31, 1963, at approximately 2:00 p. m., plaintiff was riding on the front seat as a guest passenger in a 1955 Ford automobile which was being operated by her niece, Linda Horton, in a northerly direction along the outside lane of U. S. Highway #29, or Wade Hampton Boulevard, toward the City of Greenville. U. S. Highway #29, at the point of the collision, approximately six miles from Greenville, is a four-lane highway extending from the City of Greenville to the City of Spartanburg.

The collision occurred on said highway almost directly in front of Bodie's Drive-In Restaurant at the point where Rutherford or Old Camp Road enters said U. S. Highway #29. At the point of collision there are two lanes of travel in each direction, each being ten feet in width, separated by a grass median thirty feet in width with paved cross-overs at various intervals. There is a paved cross-over at the point where the collision occurred for traffic entering U. S. Highway #29 coming out of Rutherford Road. Also commencing just north of the point of the collision and extending southerly a third lane of travel commences for traffic coming from the direction of Spartanburg and desiring to turn onto Rutherford Road; this third lane is approximately three feet in width at its point of beginning and increases in width as it extends in a southerly direction until it enters and becomes a part of Rutherford Road, which is a by-pass or truck route around the City of Greenville.

Just prior to the accident the tractor-tanker was parked parallel to U. S. Highway #29 in the area in front of Bodie's Drive-In headed toward Spartanburg, in the opposite direction of the flow of traffic along the two lanes of the highway nearest said tractor-tanker. The parking area in front of the drive-in restaurant is paved with asphalt, and this paving joins the paving on the shoulder of U. S. Highway #29 and Rutherford Road. The posted speed limit for traffic headed toward Greenville on U. S. Highway #29, [the direction in which plaintiff and her driver-companion were headed on this occasion] is a maximum of 55 m.p.h. and a minimum of 40 m.p.h. At

the point of impact one entering the highway in a motor vehicle from the parking area of Bodie's Drive-In Restaurant [the point where defendant's truck entered highway] has a clear and unobstructed view of the highway looking towards Spartanburg, [the direction from which plaintiff was traveling on said occasion] of approximately 300 feet, and has a clear and unobstructed view from said point in the opposite direction looking toward Greenville of approximately 400 feet. The areas extending along U. S. Highway #29 on both sides of the point of the collision are heavily developed containing many business establishments and residences. The highway is a very heavily traveled main traffic artery connecting two of the largest cities in South Carolina and is used extensively by commercial vehicles as well as passenger automobiles.

James Raymond Blocker, the driver of the tractor-tanker unit of defendant Piedmont Chemical Company at the time of the collision was acting within the scope of his employment with said defendant. He had been employed by the company for approximately three months and had been driving this particular unit for two days. He admitted that it was an old, extensively used, vehicle which was a "wreck" and had a shift transmission which would not change very fast. He also admitted that the tractor did not have much pulling power. The overall length of the vehicle was approximately forty-two feet. On the occasion in question just prior to the collision the driver of defendant's truck traveled along Rutherford Road to the point where the same intersects with U. S. Highway #29; he then parked his vehicle, as aforesaid, in front of Bodie's Drive-In Restaurant heading toward Spartanburg, parallel to and approximately ten feet off the edge of said highway. He left the truck parked in that position while he obtained a sandwich and made a phone call in the restaurant; his immediate destination was the Town of Lyman in Spartanburg County. It was necessary for him to cross both lanes of traffic leading toward Greenville, and the median strip, in order to enter the two lanes of traffic headed towards Spartanburg. Upon leaving the restaurant he turned his truck to his right and proceeded slowly across the two southbound lanes of traffic headed towards Greenville, directly in the path of the automobile in which plaintiff was riding as a passenger. As he started to cross these lanes he looked to his left [the direction from which plaintiff was coming] and did not see the approaching 1955 Ford automobile, so he proceeded on across the southbound lanes and into the median strip. When he reached the inside edge of the two northbound lanes he brought his vehicle to a stop in such a position that it extended directly across and completely blockaded the two southbound lanes and partially blockaded the third southbound lane that runs into and forms Rutherford Road, leaving only six feet of the total traveled portion of the highway open and clear. He drove the large tractor-tanker into this much-traveled highway without observing the approaching automobile in which plaintiff was riding; he failed to keep a proper lookout, and failed to yield the right-of-way to plaintiff's vehicle, as required by the common law rules of the road and the statutory laws of the State of South Carolina. He admitted upon cross examination, and I find that the automobile in which plaintiff was riding was in such a position when he initially entered the highway that he could and should have seen the same approaching at that time. He also should have determined that no other traffic was approaching from his right on the northbound lanes, so that he could have gone on across the southbound lanes and entered the northbound lanes without having to stop and blockade the southbound lanes. Thus, I find that he negligently entered a much traveled through highway from a private drive without yielding the right-of-way, and without determining that said entry could be made with safety, in violation of

Section 46–424 of 1962 South Carolina Code of Laws.[2]

The 1955 Ford automobile in which plaintiff was riding on the right front seat as a passenger was being operated in a southerly direction along the outside lane of traffic along U. S. Highway #29. There is a sharp dispute as to the speed at which the car was being driven, ranging from a low of 40 m.p.h. to a maximum of 65 to 70 m.p.h. From all the credible testimony presented at the trial I find that the Ford automobile was being operated upon the occasion in question at a reasonable rate of speed, in a careful and cautious manner, and in compliance with law. When Miss Horton, the driver of the car, first observed defendant's truck in the highway in front of her it was about halfway across the two southbound lanes of traffic approximately 175 to 200 feet in front of her. Immediately upon seeing the truck pulling across the road ahead she applied her brakes, turned slightly to the right, slid her wheels approximately sixty-four feet and struck the rear left portion of the tanker with the front end of her automobile with great force, damaging her automobile to the extent that it was a total loss.

In the collision plaintiff was thrown into the dash and windshield seriously damaging her about her face, head and body, rendering her in a state of shock and unconsciousness, causing her to lose large quantities of blood and requiring that she be immediately hospitalized under the care of doctors and nurses. Upon her initial examination by Dr. Clarence E. Workman at the emergency room of the Greenville County Hospital where she was carried by ambulance, it was determined that she had sustained extensive lacerations about her entire face. One laceration was over 5 inches in length beginning about the mid-portion of the right eyebrow curving downward and across the glabella area to the root of the nose, then passing beneath the medial margin of the left eyebrow to about its mid-portion, then to the upper eyelid and on to the tarsal plate. The cut carried through the lateral aspect of the lid and passed about one millimeter above the palpebral margin; then along the lateral canthal area, that is the lateral extent of the eyelid; then it curved downward into the cheek into the zycoma, which is the cheekbone; then it curved upward into the preauricular area, which is the front of the ear, and into the temporal area and ended superiorly in the hair line. The cut extended down to the bone in the lateral orbital area and was through the temporal muscle, the frontal muscle and the orbicularis oculi muscle; it also extended to the bone in the region of the glabella area. There was another 1 inch laceration just above the left eyebrow; a 1½ inch vertical type of laceration in the left forehead area, and a 1½ inch laceration in the right forehead area. She also sustained a minute pneumothorax on the left, tenderness over the 4th and 5th ribs, bruises to both knees, shoulders and arms. Her injuries required that she be hospitalized for approximately 11 days, she required from 200 to 300 stitches to suture her facial cuts, and was required to wear head and facial bandages for several weeks.

Plaintiff's lacerations healed without complications and Dr. Workman, the plastic surgeon, testified that she had obtained such good cosmetic results that no further plastic surgery was indicated. She does have permanent, disfiguring scars about most of her face. She also has suffered some permanent injury to her facial nerves and muscles, resulting in some loss of sensory sensation and improper functioning of the muscles of the left eyelid. Since the accident she has been highly nervous, suffering considerable headaches and dizziness. She is apparently quite sensitive and embarrassed about the scarring of her face;

2. Section 46–424, 1962 South Carolina Code of Laws, provides: "Vehicle entering highway from private road or driveway.—The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on such highway."

and from the testimony of her relatives and friends, who know her best, she has undergone a decided personality change, frequently suffers periods of depression and despondency, is quite irritable, tires easily, and has a twitching and watering of her eyes, especially when she is excited or under pressure. There is also evidence that her left eyelid does not close properly when she is asleep.

Although the medical testimony, based upon objective findings, does not fully support plaintiff's subjective complaints and the non-medical testimony of those who know her best, I find from all of the evidence before me that plaintiff has suffered serious, severe, and permanent injuries.

Prior to the accident her health was good, and she was able to work regularly as a waitress earning $40 to $45 a week. She also had had prior employment at Piedmont Shirt Company at $1.25 per hour, and had worked as cashier at a theater. After the accident she was totally disabled for several weeks and has been unable to resume any full time employment up to the present date. She tires very easily and is required to rest during the day. In recent months she has been physically able only to serve as a baby sitter for her sister with the aid of her father, earning about $15 a week. It is clear from the testimony that she is not now emotionally or physically able to return to her regular employment as a waitress, and that she has suffered a marked impairment in her earning capacity for an extended and indefinite period of time. In view of the disfiguring scars about her face, undoubtedly she will continue to suffer embarrassment, anguish, and humiliation. Prior to the accident plaintiff was an attractive girl, with an out-going personality. Her facial scars and disfigurement have substantially and permanently impaired her beauty, and she has undergone a definite personality change which probably will be of a permanent nature.

At the time of the accident plaintiff was 19 years of age and had a life expectancy of 47.43 years under the South Carolina Mortuary Table.[3]

As a result of her said injuries, plaintiff has suffered actual damages in the sum of $15,000.00.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and of the subject matter of this action.

2. The rights and duties of the parties are governed by the laws of the State of South Carolina, the place where the collision occurred.

3. James Raymond Blocker, the driver of the tractor and tanker upon the occasion in question, who was acting within the scope of his duties and employment with defendant Piedmont Chemical Company, was guilty of actionable negligence by his failure to exercise due care in the operation of said vehicle as required by the common law rules of the road and the statutory laws of the State of South Carolina: [a] By failing to yield the right-of-way to the plaintiff and the automobile in which she was riding, in violation of Section 46–424 of the 1962 South Carolina Code of Laws, when he drove his large and long tractor and tanker into and across a very heavily traveled highway from a private driveway;[4] [b] by failing to keep a proper lookout and failing to see the approaching 1955 Ford automobile in which plaintiff was riding as a passenger as he entered and crossed said highway; [c] by failing to have his vehicle under proper control and by operating the tractor-tanker upon the occasion in question when he knew of its defective condition; [d] by entering and attempting to cross a heavily traveled highway from the position in which his vehicle was parked,

3. Section 26–12 of the South Carolina Code of Laws [1962] as amended.

4. See note 2, supra.

when by the exercise of due care he should have realized that he would be required to blockade and obstruct the southbound lanes of traffic, along which plaintiff was traveling, because of on-coming traffic along the northbound lanes which required him to stop before entering the said northbound lanes. The violation of Section 46–424, supra, constitutes negligence per se. Green v. Sparks, 232 S.C 414, 102 S.E.2d 435 [1958]; Spencer v. Kirby, 234 S.C. 59, 106 S.E.2d 883 [1959].

■ 4. The defendant, Piedmont Chemical Company, is fully responsible for the injuries and damages to plaintiff resulting from the negligence of its driver, James Raymond Blocker, upon the occasion in question, since he was acting in the course and scope of his employment as an agent and servant of said defendant.

■ 5. Plaintiff was not guilty of any acts of negligence which concurred or contributed in any manner to the injuries and damages suffered by her in the collision.

■ 6. Any negligence, if any, of the driver of the automobile in which plaintiff was riding as a guest passenger was not imputed to plaintiff.

■ 7. The negligence of the defendant's driver which was imputed and chargeable to the defendant, Piedmont Chemical Company, was at least a contributing, concurring proximate cause, if not the sole proximate cause, of the collision upon the occasion in question and the resulting injuries and damages to the plaintiff, without which they would not have occurred.

Based upon the foregoing findings of fact and conclusions of law it is my opinion that plaintiff is entitled to recover judgment against defendant Piedmont Chemical Company in the sum of $15,-000.00 as actual damages, together with the costs of this action, and it is so OR-DERED.

Let judgment be entered accordingly.